Good morning. Matt Larson of the Federal Defender's Office for Mr. Ortega-Algaraz. Your Honors, in Miranda, the Court said, an individual held for interrogation must be clearly informed that he has the right to consult with a lawyer. Wait, have the Court never said that in Miranda? Begging your pardon? The Court, the specific, the four specific warnings that the Court mentioned in Miranda that needed to be given, they never used the word consult. The phrase I just quoted is at page 471, but referring to Your Honor's question, yeah, the four, the famous four. The one that concerns us here is number three, which says you have the right to the presence of a lawyer. It's unqualified and it's general. Here, that's not what Mr. Algaraz was told. He said you have the right to have the presence of a lawyer during questioning, not before questioning. Well, and that one would be appointed before questioning. Appointed, Your Honor. Appointed doesn't mean consult with. Appointed doesn't mean talk to. The definition of appointed, appoint means to assign a job or a role to someone. That's from the Oxford American Dictionary. An appointment is the designation of a person. The defendant interpreted that to say that we're going to appoint a lawyer for you. He's going to be sitting right there, but you can't consult with him. Appointment, Your Honor, in the context of what Mr. Algaraz was told, means a lawyer will be designated to represent you by the State and then made available physically at questioning. Mr. Algaraz was never told that a lawyer would be physically produced for him to consult before making the threshold. I don't think that if the lawyer is produced, he's sitting right there, that somehow that doesn't convey that once we appoint the lawyer, you're going to be able to consult. At questioning, yes, Your Honor. That's not the issue here. The issue here is whether he was told that he could talk to a lawyer before questioning, and he never was. The problem I have is that whatever foreshore argument might have had, had the Supreme Court not been rather generous in recognizing Miranda warnings that are rather indistinct. Given Powell and given Duckworth, I don't see how you can prevail, at least as my going-in notion. Your Honor, Powell, Duckworth, Price, O'Connell, all of these cases, the individuals were told that you have the right to talk to a lawyer before answering any of our questions. But they were not told other – they were – more generally, though, they took, I'd say, in Duckworth, certainly, much more misleading instructions and said, that's okay, they won't read it that way. Here's what Mr. Alcaraz was told. He said, you have the right to have a present – I know, but what I'd like is a comparison to the Duckworth instruction, not point by point, but to its degree of likely confusion. I think the two things Mr. Alcaraz foretold never told him the right issue here. He's told first, you have the right to have a lawyer during questioning. You're not doing what I asked you to do. I'm sorry? You're not doing what I asked you to do. I mean, in Duckworth, he was essentially told, or appeared to be told, that we're not going to appoint a lawyer for you now. We'll only appoint one for you later at the argument and at the hearing. And the court said, oh, no, that's good enough. Right.  That was the advisement in Duckworth that was upheld. And the court said it was fine because the defendant there was told to have – he was told of his right to talk to a lawyer before and during questioning. Moreover, there was a written Miranda waiver. But we won't appoint one for you. I'm sorry? But we can't appoint one for you. The appointment issue, Your Honor, I think this case concerns the right to consult and talk to the lawyer. Appointment, by any definition, legal or otherwise, means to designate someone to do a job. Now, to designate someone to do a job does not mean you'll be able to talk to that person before you decide whether to answer any questions. The person will be produced for you at questioning, if you wish, but you don't – Mr. Alcarez was never told he could talk to a lawyer before that happened to decide if he was going to make the threshold and extremely important decision whether to talk to the police. But I'm just looking at the four warnings, again, that Miranda prescribed, and they capture perfectly what this guy was told. Your Honor, again, the four warnings. Number three, the presence of an attorney. It's unqualified. In Prysock, the court said nothing in the warnings there suggested any limitation on the right to the presence of appointed counsel. And for that reason, the instruction in Prysock was upheld. Here, there was a limitation on the right to the presence of appointed counsel. Counsel would only be produced during questioning, not before. Well, what about the case decided by the circuit, I believe, in which the mirror image in which the defendant was told you can talk to a lawyer beforehand, and he claimed an appeal. Well, that's not good enough. They should have told me I could talk to him during questioning as well. Are you referring to the instruction Powell? You mentioned a circuit case. In Powell, yes. In Powell, the court said, look, he was told you can talk to a lawyer before questioning, and you can invoke this right at any time. And he said, oh, well, this was defective because I wasn't told expressly that the lawyer I would have before questioning would then be in the room with me during questioning, even though I was told that I could invoke this right at any time. The court was like, no, no, no, that's silly. Let's not parse this. Any reasonable reading of that is if we're giving you a lawyer beforehand and you can invoke the right to a lawyer at any time, it means you can talk to him in the room. He doesn't have to be shuttled back and forth. Here, that's the opposite of what happened. Mr. Alcarez was never told he could talk to a lawyer before making this threshold decision. The lawyer would be provided only during questioning. And the Court, the Supreme Court and this Court, in every case, every precedential case, Your Honors, the individual was told that you have the right to talk to a lawyer before questioning. Powell, Duckworth, Prisak, Connell, there is not a single precedent in this circuit or in the Supreme Court that has upheld the warning here, where the crucial advisement, the advisement to talk to a lawyer before questioning, was given to the defendant. There's no case cited, no precedential case cited in the government's brief that upholds the instruction here. And in fact, the instruction here was botched. But what about Snare? Snare, Your Honor, Snare, the individual was told you have the right to consult with a lawyer. And only grudgingly, then, did the Court say, in combination with also being told the lawyer would be present at questioning, the Court grudgingly said, all right, this meets the minimum requirements of Miranda. And, Counsel, that was a case I was referring to that slipped my mind. Not at all. And why isn't that a mirror image of this situation? Because, Your Honor, there, Mr. Wasn't it defective to the same degree, in a sense, that this is defective? I mean, here we have, you know, you have the right to have a lawyer present, or I can't remember the exact form. During questioning. During questioning. Not before. During questioning. But doesn't, I mean, in other words, no questions can be asked until he's in that room with you. Until he makes an informed waiver, Your Honor. And there is no Miranda waiver in this case. That's also critical. The failure to ask for a lawyer. Frankly, I mean, that seemed to me to be somewhat more interesting. But you don't really make anything of that. Begging your pardon if it's not fleshed out entirely, Your Honor. I talk about the lack of a waiver. In Miranda, the court said, failing to ask for a lawyer is not a waiver. The record has to show that an accused was offered counsel, but intelligently and understandingly rejected that offer. Don't other cases largely eat that up? I'm sorry? Don't some of the more recent cases largely eradicate that notion? Well, let's look at the record here. When the police said, Mr. Alcaraz, do you want to talk to us, he did not say yes. He said, well. No, he didn't. But my understanding of where the case law has been going is if he then goes ahead and actually does it, which he did here, that's good enough for a lawyer. So it depends upon what you guys want or whatever. That depends on what you want to ask me. Right. It's not a yes, which we normally see in cases. People say yes, they sign a Miranda waiver, there's a written form. Here that didn't happen. There's a case in this circuit. I assume that the reason why you didn't make much of that is because he then did go on and talk to them. No, it was my fault for not including U.S. v. Gonzalez, which I'm going to put in a 28-J letter on today. In U.S. v. Gonzalez, this Court said prior to obtaining a Miranda waiver, an officer must clarify the meaning of an ambiguous or equivocal response to the Miranda warnings before proceeding with general interrogation. Here, Mr. Alcaraz did not give a waiver. He gave a complete equivocation. That depends on what you guys want to ask me. Right. They proceeded to ask him questions that he felt comfortable asking. He felt he answered every single one of their questions, Your Honor, not being told that he could talk to a lawyer first to decide if he should do so. Well, then you're back to the other issue, but sticking to the waiver question. Sticking to the waiver question. Yes, Your Honor. A waiver is an intentional relinquishment of a known right. Can we go back to Snare? Because it seems to me directly on point. Snare. You kind of brush it aside rather breezily. Your Honor, in Snare, the defendant was told, you have a right to consult with a lawyer. Right. Mr. Alcaraz never was. Well, yeah, but his complaint was, I wasn't told I had a right to consult with a lawyer before questioning. Correct. Right. And they said, but they told you you were going to get a lawyer appointed. You would get a lawyer at questioning, during questioning, not before questioning. They said that was enough for him to infer that the lawyer would be available. Enough in combination with the advisement that he could consult a lawyer. Mr. Alcaraz was never told he could consult. He's told, we're going to appoint a lawyer for you before questioning. As I've said, Your Honor, appointment doesn't mean talk to. It's a ministerial task. The State will appoint a lawyer to represent you. That lawyer will be produced at questioning. He was never told you could talk to the lawyer beforehand. Miranda warnings have to be clear. And the other one is, we're going to appoint a lawyer for you who will be available before questioning. That's reading in, Your Honor, into what was not – that's reading text into what – Why else was he telling him before questioning? I'm sorry? Why else would he even say before questioning? It wasn't relevant to anything else. Appointed before questioning? Yeah. That's what the Miranda card they were reading off said. But what the Miranda – They didn't have a Miranda card, I thought. They had a Miranda card, Your Honor. The Miranda card said you have the right to the presence of a lawyer before and during any questions. The officer here omitted the word before because he was doing an on-the-spot translation from English into Spanish. The Miranda card I can certainly also submit to the Court for its review. The critical word here is before, and that's the word that was omitted. With your Court's permission, I'd like to reserve – well, with the Court's indulgence – You don't have any indulgence. Go ahead. Thank you. Perhaps some time for rebuttal. Thank you. Good morning, Your Honors. May it please the Court, Doug McCormick for the government. The defendant essentially asked the Court to do just what Florida v. Powell told this Court and others it could not do, which is to engage in really hyper-technical reading of the advisements and to do some counterintuitive speculation about what the defendant would have thought. The defendant concluded – I'm sorry, Judge Fischer concluded – that Detective Alfaro's advisements that, one, the defendant had the right to have an attorney present during questioning, and, two, the advisement that if he could not afford an attorney, one would be appointed for him before the questions, was sufficient to reasonably convey to defendant that he had the right to consult with an attorney before the questioning. And that's the test, reasonably convey. And once that test is satisfied, as the Court did in Snare 27 years ago, and in Skaggs, an unpublished decision just a few years ago, that ends the issue. An express advisement is not required, and the defendant went ahead and answered the questions. That ends the Miranda issue, and the defendant at that point – What about the equivocal waiver? Well, I actually don't find it that equivocal, Your Honor. Any equivocal? At least with respect to the Miranda issue. It's not equivocal about Miranda. It's equivocal about whether he's going to answer questions or not. He says, it depends on what you ask me. And I think it also could be read that, look, yeah, it depends. Yeah. If I don't want to talk to you, I won't talk to you. If I want to talk to you, yeah. You ask me questions. You shoot, and I'll duck or stand up. Right. You ask me questions I like, I like. I'll answer those questions. You ask me questions I don't like, I'm not going to answer those. The fact that he went ahead and answered questions simply suggests that he liked the questions or that he went along with it. I apologize, I can't recall. What, if anything, incriminating did they learn before they put him in the back seat and found out he had boxes of pills in his house or whatever? In other words, what did they actually learn in that initial period during that give and take, if anything? Well, the critical statement for purposes of defendant statements came actually in the second interview, which was later in the evening. That's what I thought. Yeah. Correct. I mean, the first statement actually was an exculpatory statement. He said, I was getting these pills to take them to my sister's pharmacy. The pharmacy. My sister's got a pharmacy in Mexico. Correct. Then they put him in the back of the police car. He tells one of his co-conspirators, yeah, I've got a laundry bag or I've got a bunch of pills at the house. I think he said 700 boxes or something, I don't remember. Go ahead. But there was no second Miranda warning. No. You're still relying on the same Miranda warning. We are relying on the same Miranda warning, although the officer who interviewed him the second time said, and I want to be very accurate about what the officer the second time said, he said, I asked him if he remembered speaking to me, speaking to the other officers earlier in the day, and he said he did, and I asked him if he remembered that that officer had read him his rights, and he said he did. And I said, are you willing to speak with us again? And he said he was. So, you know, he went back and went right back to what he had been advised earlier in the day, several hours earlier. And he went ahead and answered that officer's questions as well. And doesn't that answer the waiver issue? If you've read that correctly, are you willing to talk to us? Yes, I am. Yes, it does. So doesn't that take the equivocation, if any, or the uncertainty, if any, as to the first response out of the case if what mattered to the prosecution was what they learned later? The unrecorded interrogation, which for me is kind of troublesome, but that's another entire issue. I see your point, Your Honor, and I agree. What about the, if I may, on the sentencing issue? Do you have any comments on that? Which one, the minor role or the reasonableness of the sentence entirely? The minor role. Well, with respect to the minor role, as I understand the defendant's point, it is that the court should have considered some broader conspiracy. So there was sort of this up-the-chain conspiracy, which was not charged. Correct. She wasn't charged with being involved in that. Correct. And I think if, and what Judge Fischer said is, look, the amount of drugs he's being held accountable for here is simply the amount of drugs he was found with. It would be inappropriate to go ahead and consider some broader conspiracy without sort of increasing the amount of drugs he was responsible for. And frankly, even if the court said, well, we're going to consider the fact, or Mr. Court should have considered the fact that there was some fire with the pseudo-veteran, which there certainly was. But we don't know what he was going to be doing with it. We don't know what he was going to be doing with it. He could have had a whole bunch of customers instead of one single. Correct. He probably had no conspiracy. Correct. But also, I think for purposes of whether the defendant had a minor role, his role was not minor. He had an integral role. He was the person who recruited other co-conspirators to go with him to the pharmacies. He was the driver. He was the stockpiler. He was the person then that was funneling all this pseudo-veteran to the person who was buying the pseudo-veteran. He was sending other guys in. He was going in with other guys and sending other guys in. Both, Your Honor. Both. None of those. I think all of those facts would make Judge Fischer's finding that a minor role adjustment was not appropriate well-founded. And without any other questions, Your Honors, I'll submit. Thank you very much. Sir, we'll give you one minute. Certainly. Let me say, Counsel, I agree with you. I'm not sure I'd characterize your characterization about cold medicine, but I understand exactly why. Literally, it was cold medicine, but it's also a precursor drug. It's a rather eye-popping sentence. I've got to admit that. Indeed, Your Honor. That's astonishing. But I don't, candidly, it was statutory maximum. It was less than the guidelines or within the guidelines. Again, I apologize for being somewhat vague. A mid-range guideline sentence. Right. Based on a guideline that's applied between 10% and 20% of the time, 80% or 90% of the time, the guideline is not followed because judges recognized how unreasonably harsh it is. So much for eliminating disparity. Indeed. Indeed. And certainly in regard to this case with regard to the other defendants who got substantially lower sentences are doing essentially the same thing. Speaking of the sentencing issues. What about the mitigating role? The role. It's clear that the judge here misinterpreted the guidelines. She did not understand that when considering a mitigating role reduction, you have to assess the defendant's conduct within the context of the larger uncharged scheme. Here that larger uncharged scheme was methamphetamine production and distribution network. The judge herself said clearly this exists, but I'm not going to consider it because it wasn't charged in the indictment. Well, I think she said she didn't have any evidence before her of who these other people were. How was she supposed to assess the defendant's role relative to these other people who she had no information about? Well, the other people, Your Honor, this court addressed that in Rojas Milan. It said other people don't have to be identified by the prosecution, don't have to be named. As long as there's some evidence of them, and here there was. There was El Norteno. There was a man who undisputed, and the government agrees with this, was the person to whom the defendants were selling. Well, we don't even know what he was doing with them. We don't know what he was doing, but here the judge herself said clearly there is a larger methamphetamine operation here. These guys aren't just buying Sudafed, right? There's a larger operation at stake, and this court in Webster, in Rojas Milan, said when applying the mitigating role guideline, you have to consider the larger uncharged scheme. The judge flatly refused to do it because it wasn't charged. How much of a difference would that make? I'm sorry? How much of a difference would that have made in the guidelines? Eighty months, Your Honor. Eighty months. This was not some trivial misinterpretation. This was a very material misinterpretation of the guideline that, at minimum, requires resentencing so the judge can consider the guideline properly. Then I guess the question is, let's assume you do that. I assume that it's likely that there is a larger scheme of people who are using this to make methamphetamine. What's minor about this? If you characterize him as the person who is charged with collecting the Sudafedrin which they need and that he's essentially running other people and paying them and telling them where to go and driving them in his truck and keeping them in his house and so on, in other words, he's the person who's getting the Sudafedrin. Why is that minor? It's minor in the scheme of the meth operation, Your Honor. Why? Because he's getting the precursor. He's not using it to make methamphetamine. He's not distributing it. Well, that's true, but he is doing something essential and he's in charge of doing it. He's doing something essential at the very first step of the chain. Certainly comparing the harms, it's much more harmful to actually be distributing meth to families than it is to buy the cold medicine needed to make the meth. I'm not saying it's harmless, but it's certainly less harmful than the action of a drug dealer who goes out, sells this terrible stuff to people and may be violent in the process. Again, Mr. Algaraz is not a violent man and never has been. His priors are trivial and he was doing this for economic reasons which don't excuse him but which certainly mitigate his offense. The 17 years without rages, Your Honors. I mean, 17 years for a first-time nonviolent offender for unlawfully possessing a precursor which was never actually used to make a drug and in doing so in which he never harmed anyone. People routinely get less sentences for killing others, for distributing actual drugs. You don't know that it wasn't used. You just know that there's no proof it was used. I'm sorry, Your Honor? We don't know that it wasn't used. Certainly the seized cold medicine was not and there was no evidence put in that anything he had done was ever actually translated into actual methamphetamine. But how can we reach the point where we can find this sentence substantively unreasonable? Substantively unreasonable, Your Honor, going through all of the 3553A factors. First of all, the guideline itself is essentially unsound as reflected in the fact that it's rejected between 80 and 90 percent of the time. Is that on the record, by the way? It is, Your Honor. It's in the defendant's sentencing papers which is in, it's ER, I believe around 230 or 250. I'll give you the exact citation later today. But the court recognized that it had the discretion to depart from the guideline on policy grounds and just simply declined to exercise it. That's correct. And we're not saying that she made a mistake in that regard. What we're saying is that she, a reasonable person, made an unreasonable decision in this case to sentence a first-time nonviolent offender to 17 years in prison for his unlawful possession of this pseudoephedrine. That was the substantively unreasonable decision here. I can go through all of these factors. He has no meaningful priors. He has, he is not a violent man. He's had essentially no prior contact with law enforcement. That was found in his house or in his residence, right? The pills were actually in his mother's apartment. And yes, the police initially tried to use that or ultimately did use that to extract a confession from him after not advising him. I'm saying there were guns found. The guns, as the judge properly, the guns were excluded from trial and for good reason. They were in his lawful possession. He's never unlawfully discharged a firearm. And the guns were in a different apartment than the pills. This sentence is, you know, substantive unreasonable sentences are few and far between, Your Honors, but this is one of them. For someone who's never been in meaningful trouble with the law, for someone who's not violent, for someone who, aside from this offense, has been a productive member of society, who has been gainfully employed, who has supported a family, who is a legal resident of this country, to be sent away for nearly two decades, essentially the statutory maximum on a first offense, is unreasonable. Thank you. I think the phrase you used was madness. Indeed, that too. And thank you for your passion. And the case of United States v. Ortega is submitted.
judges: Carr, Berzon, Watford